UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**WAYNE BAKER, individually and**
**d/b/a BAKER FARMS, JOANNA BAKER,**
**BLACKWATER FARMS, INC., a New Mexico**
**corporation, and ABCO FARMING, INC.,**

      **Plaintiffs,**

**v.**                                                                                                    **CIV 03-874 LAM/KBM**

**BANK ONE, TEXAS, N.A.,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Stay Proceedings and Compel Arbitration (*Doc. 19*).[1] In accordance with 28 U.S.C. § 636(c)(1) and FED. R. CIV. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed the motion, the brief in support of the motion, the affidavit of Bernard R. Given, II, in support of the motion, Plaintiffs' response to the motion, Defendant's reply to Plaintiffs' response, and relevant authorities. The Court **FINDS** that the motion is well-taken and should be **GRANTED** for the reasons set forth below.

---

[1] The motion before the Court was filed by Bank One, NA, as successor in interest to Bank One, Texas, N.A.; however, Bank One, Texas, N.A. remains the only defendant of record in this case as no motion for substitution or joinder of Bank One, NA, has been filed by Plaintiffs or Defendant.

**I. Background**

Plaintiffs filed this lender liability action against Defendant Bank One, Texas, N.A. (hereinafter, "Bank One") on July 24, 2003. In their Complaint (*Doc. 1*), Plaintiffs assert state law claims for breach of contract, intentional misrepresentation, loss of prospective economic opportunity, violation of a contractual covenant of good faith and fair dealing, unfair or deceptive trade practices in violation of the New Mexico Unfair Practices Act,[2] and *prima facie* tort. Plaintiffs' claims stem from Bank One's banking relationship with Plaintiffs and Bank One's alleged failure to originate and service a federally-guaranteed Farm Service Agency loan (hereinafter, "FSA Loan") for Plaintiffs in 2000. As remedies, Plaintiffs seek an award of compensatory damages, punitive and/or treble damages, attorneys' fees, pre-judgment interest, post-judgment interest and costs. Plaintiffs allege, and Bank One has not disputed, that the Court has subject matter jurisdiction of this case based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and the national banking association citizenship provision of 28 U.S.C. § 1348.     During the course of their banking relationship, Plaintiffs and Bank One entered into a Second Amended and Restated Loan Agreement dated as of April 22, 2000 (hereinafter, "Second Loan Agreement"). *See Affidavit of Bernard R. Given, II (Doc. 22), ¶2, and Exhibit 1 at 1 (executed on May 25, 2004)*. According to its terms, one purpose of the Second Loan Agreement was to renew and extend Plaintiffs' prior indebtedness to Bank One. *See Given Affidavit, Exhibit 1 at 1*. The Second Loan Agreement contains the following agreement to arbitrate:

> 12.16 **Arbitration**. Lender and Borrower agree that upon the written demand of either party, whether made before or after the institution of any legal proceedings, but prior to the rendering of any judgment in that proceeding, *all disputes, claims, and controversies between them, whether individual, joint, or class in nature, arising*

---

[2]West's New Mexico Statutes Annotated 1978, §§ 57-12-1 to 57-12-24 (2003).

> *from any of the Loan Documents, including, without limitation, contract disputes and tort claims,* will be resolved by binding arbitration pursuant to the Commercial Rules of the American Arbitration Association ("AAA"). Any arbitration proceeding held pursuant to this arbitration provision will be conduction in the city nearest the Borrower's address having an AAA regional office or at any other place selected by mutual agreement of the parties. No act to take or dispose of any Collateral will constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This arbitration provision will not limit the right of either party during any dispute, claim, or controversy to seek, use, and employ ancillary or preliminary rights and/or remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting, foreclosing upon, or proceeding under forcible entry and detainer for possession of any real or personal property; and any such action will not be deemed an election of remedies. The remedies include, without limitation, obtaining injunctive relief or a temporary restraining order, invoking a power of sale under any deed of trust or mortgage, obtaining a writ of attachment or imposition of a receivership, or exercising any rights relating to personal property, including exercising the right of set off or taking or disposing of the property with or without judicial process pursuant to the Uniform Commercial Code. Any disputes, claims or controversies concerning the lawfulness or reasonableness of an act or exercise of any right or remedy concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, will also be arbitrated; provided, however, that no arbitrator will have the right or power to enjoin or restrain any act of either party. Judgment upon any award rendered by any arbitrator may be rendered in any court having jurisdiction. The statute of limitations, estoppel, waiver, laches and similar doctrines that would otherwise be applicable in an action brought by a party will be applicable in any arbitration; and the commencement of an arbitration proceeding will be deemed the commencement of any action for these purposes. *The Federal Arbitration Act (Title 9 of the United States Code) will apply to the construction, interpretation, and enforcement of this arbitration provision.*

*Given Affidavit, Exhibit 1 at 30-31 (emphasis added).* The Second Loan Agreement defines "Loan Documents" as: "this Agreement, the Notes, the Security Agreements, the Guaranty, the Mortgages and all extensions, renewals, modifications, and amendments thereof, and any and all other documents and instruments executed and delivered in connection therewith. *Given Affidavit, Exhibit 1 at 5.*

3

Plaintiffs filed their Complaint (*Doc.1*) with this Court on July 24, 2003. On May 7, 2004, Bank One's counsel demanded arbitration of Plaintiffs' claims pursuant to the Second Loan Agreement by means of a letter to the American Arbitration Association which was copied to counsel for Plaintiffs. *See Given Affidavit, ¶ 3, and Exhibit 2*. Plaintiffs have declined to participate in arbitration and have taken the position that the arbitration provision in the Second Loan Agreement does not apply to their claims.[3] Bank One's motion seeks an order, pursuant to the Federal Arbitration Act (hereinafter, "FAA"), 9 U.S.C. §§ 1-16, staying judicial proceedings in this case pursuant to the parties' agreement to arbitrate and compelling Plaintiffs to arbitrate.

## II.  The Arbitrability of Plaintiffs' Claims

Plaintiffs do not dispute that they are parties to the Second Loan Agreement with Bank One which contains the above-quoted arbitration provision. *See Plaintiffs' Response to Motion to Stay Proceedings and Compel Arbitration (Doc. 26), at 1-2*. Nor do Plaintiffs dispute the validity of the arbitration provision in the Second Loan Agreement. *Id.* Instead, Plaintiffs argue that their claims fall outside the scope of the arbitration provision because their claims arise not from the "Loan Documents" but from Bank One's promise to originate and service the FSA Loan. *Id.* Plaintiffs contend that they ordered their business affairs in anticipation of receiving the FSA Loan and suffered catastrophic losses when Bank One allegedly reneged on it promise to originate and service the FSA Loan. *Id.* Thus, to decide Bank One's motion, the Court must decide whether Plaintiffs' claims fall within the scope of the arbitration provision in the Second Loan Agreement.

---

[3]The Court finds that Plaintiffs have refused to arbitrate their claims evidenced by their opposition to Bank One's motion following its written demand for arbitration. *See Plaintiffs' Response to Motion to Stay Proceedings and Compel Arbitration (Doc. 26), at 1-2*.

In deciding Bank One's motion, the Court must first determine whether the FAA applies to the parties' agreement to arbitrate. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401 (1967). When an agreement to arbitrate contains a choice-of-law provision, that provision must be honored and a court interpreting the agreement must follow the law of the jurisdiction selected by the parties. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478-479 (1989); *see also Ottowa Office Integration Inc. v. FTF Business Systems, Inc.*, 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001). In this case, the choice-of-law clause in the parties' arbitration provision makes the FAA applicable to the "construction, interpretation, and enforcement" of the arbitration provision. While Plaintiffs dispute the arbitrability of their claims under the arbitration provision, they do not, as noted above, dispute the validity of the arbitration provision or its choice-of-law clause. Accordingly, the Court concludes that it must follow the law selected by the parties and apply the FAA, and case law interpreting the FAA, to its analysis of the scope of the arbitration agreement and the arbitrability of Plaintiffs' claims. In doing so, the Court bears in mind that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citations omitted).

Before it can stay this proceeding pending arbitration under Section 3 of the FAA, the Court must be satisfied that Plaintiffs' claims are referable to arbitration under the arbitration provision of the Second Loan Agreement. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States *upon any issue referable to arbitration under an agreement in writing for such arbitration*, the court in which such suit is pending, *upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement*, shall on application of one of the parties stay the trial of the action until such

>> arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3 (emphasis added). Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp.*, 473 U.S. at 626 (citations omitted). Moreover, under the FAA there is a rebuttable presumption that matters in dispute are subject to arbitration. *See Armijo v. Prudential Insurance Co. of America*, 72 F.3d 793, 797-799 (10th Cir. 1995).

The arbitration provision in the parties' Second Loan Agreement makes arbitrable "all disputes, claims, and controversies between them, whether individual, joint, or class in nature, *arising from any of the Loan Documents*, including, without limitation, contract disputes and tort claims." *Given Affidavit, Exhibit 1 at 30 (emphasis added)*. Plaintiffs argue that their claims are not arbitrable under this provision because they do not arise from the "Loan Documents." Plaintiffs contend that their claims arise from Bank One's promise to originate and service the FSA Loan, not from the "Loan Documents."

Based on the pleadings, and the documents filed in connection with Bank One's motion, the Court finds that Plaintiffs' claims arise from the "Loan Documents," as defined in the Second Loan Agreement, and are arbitrable, in at least two respects. First, the Court finds that Plaintiffs' claims arise from Bank One's lender's agreement for the FSA loan which is a "Loan Document" as defined in the Second Loan Agreement. "Loan Documents" are broadly defined in the Second Loan Agreement as "this Agreement, the Notes, the Security Agreements, the Guaranty, the Mortgages and all extensions, renewals, modifications, and amendments thereof, *and any and all other documents and instruments executed and delivered in connection therewith*." *Given Affidavit, Exhibit 1 at 5 (emphasis added)*. It is clear from the undisputed facts of this case that Bank One

6

executed and delivered the lender's agreement for the FSA Loan in connection with the other "Loan Documents", making it a "Loan Document" under this broadly worded definition. In this regard, it is undisputed that the parties had a banking relationship, that their banking relationship was evidenced by various documents including the "Loan Documents," that Plaintiffs borrowed approximately $2.2 million dollars from Bank One, that Bank One classified Plaintiffs' loans as non-performing, and that Bank One executed the lender's agreement for the FSA Loan and participated in Plaintiffs' efforts to obtain the FSA Loan in order to assist Plaintiff with its financial obligations to Bank One pursuant to the "Loan Documents". *See Complaint (Doc. 1), ¶¶ 5, 6, 8-11; Answer (Doc.14), ¶¶ 5, 6, 8-11; Given Affidavit, ¶ 2, and Exhibit 1; Plaintiffs' Response to Motion to Stay Proceedings and Compel Arbitration (Doc. 26), at 1-2.* Plaintiffs acknowledge this connection between the lender's agreement for the FSA Loan and the other "Loan Documents" by alleging that Bank One required them to apply for the FSA Loan and induced them to apply for the FSA Loan "in the apparent attempt to restructure their financial obligations." *Complaint (Doc. 1), ¶¶ 8, 24.* Second, the Court finds that Plaintiffs' claims arise from the documents related to Bank One's equipment loan to Plaintiffs which are "Loan Documents" as defined in the Second Loan Agreement. It is undisputed that after Plaintiffs' loans were classified as non-performing, Bank One instructed Plaintiffs to assemble the equipment which served as collateral for the equipment loan pursuant to Article 9 of the Uniform Commercial Code. *Complaint (Doc.1), ¶ 13; Answer (Doc.14), ¶ 13.* Plaintiffs allege this was done by Bank One at harvest time to shut down their farming operations and left them with no reasonable alternative but to file for bankruptcy. *Complaint (Doc.1), ¶¶ 13-14.* As a result, Plaintiffs allege that they lost their largest farming operation and otherwise sustained damages. *Complaint (Doc.1), ¶¶ 35-36.* The equipment loan is governed by the Second Loan Agreement, and the note evidencing the equipment loan and any security agreements creating security interests in collateral for the equipment loan under

Article 9 of the Uniform Commercial Code are "Loan Documents" as defined in the Second Loan Agreement.[4] *Given Affidavit, Exhibit 1 at 4-7.* Based on the foregoing, the Court finds there is sufficient evidence to establish that Plaintiffs' claims arise from the "Loan Documents," as defined in the Second Loan Agreement, making them arbitrable under the arbitration provision of the Second Loan Agreement as claims "arising from any of the Loan Documents."

### III. Conclusion

The Court concludes that the parties' written agreement to arbitrate contained in the arbitration provision of the Second Loan Agreement is valid and enforceable, and that Plaintiffs' claims fall within the scope of the arbitration provision as claims arising from the "Loan Documents," as defined in the Second Loan Agreement. Accordingly, the Court **FINDS** that Bank One's motion should be granted and an order is warranted pursuant to Sections 3 and 4 of the FAA, 9 U.S.C. §§ 3 and 4, staying this case pending arbitration and compelling Plaintiffs to submit their claims against Bank One to arbitration in accordance with the arbitration provision of the Second Loan Agreement.

---

[4]The Second Loan Agreement defines "Loan Documents" to include "the Notes, the Security Agreements . . . and all extensions, renewals, modifications, and amendments thereof," and it defines "Notes" to include "the Equipment Note." *Given Affidavit, Exhibit 1 at 5.* "Equipment Note" is defined in the Second Loan Agreement as "the note executed by Borrower and delivered to the Bank evidencing the Equipment Loan, and all extensions, renewals, modifications, substitutions, and increases thereof," and "Equipment Loan" is defined as a loan from Bank One to Plaintiffs in the original principal amount of $1,193,500.00." *Given Affidavit, Exhibit 1 at 4, 7.* The Second Loan Agreement defines "Security Agreements" to include "the Security Agreement(s), which have been previously executed and delivered, to secure payment of the Notes under the terms of this Agreement, granting to the Bank a first priority security interest covering the Property described therein, any modifications or replacements thereof, and any additional Security Agreements executed to secure payment of the Notes." *Given Affidavit, Exhibit 1 at 6.* Under the foregoing definitions, both the note evidencing Bank One's equipment loan to Plaintiffs and the security agreements securing payment of the equipment loan are "Loan Documents" as defined in the Second Loan Agreement.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Stay Proceedings and Compel Arbitration (*Doc. 19*) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **stayed pending arbitration**, and Plaintiffs shall submit their claims against Bank One to arbitration in accordance with the arbitration provision of the Second Loan Agreement.

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**